IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
Civil No: 1:19-cv-488

| | |
|---|---|
| **ANGELA M. BECK,** )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>**HUGH J. HURWITZ,** Acting )<br>Director of the Federal Bureau of )<br>Prisons of the United States of )<br>America, *in his official and* )<br>*individual capacity*; **J.A. KELLER,** )<br>Southeast Regional Director of the )<br>Federal Bureau of Prisons, *in his* )<br>*official and individual capacity*; )<br>**PATRICIA V. BRADLEY,** )<br>Warden of the Federal )<br>Correctional Institute, Aliceville, )<br>Alabama, *in her official and* )<br>*individual capacity*; **JOHN DOE** )<br>and **JANE DOE,** unidentified )<br>present and former officers, agents, )<br>and/or employees of the Federal )<br>Correctional Institute, Aliceville, )<br>Alabama; and **SEVEN CORNERS,** )<br>**INC.,** )<br>)<br>Defendants. | **COMPLAINT FOR IMMEDIATE<br>INJUNCTIVE AND OTHER<br>RELIEF CONCERNING<br>PLAINTIFF'S URGENT<br>MEDICAL CONDITION** |

_____

1

Case 1:19-cv-00488-CCE-LPA   Document 1   Filed 05/10/19   Page 1 of 19

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
Civil No: 1:19-cv-488

**ANGELA M. BECK,**

    Plaintiff,

v.

**HUGH J. HURWITZ,** Acting Director of the Federal Bureau of Prisons of the United States of America, *in his official and individual capacity*; **J.A. KELLER,** Southeast Regional Director of the Federal Bureau of Prisons, *in his official and individual capacity*; **PATRICIA V. BRADLEY,** Warden of the Federal Correctional Institute, Aliceville, Alabama, *in her official and individual capacity*; **JOHN DOE** and **JANE DOE,** unidentified present and former officers, agents, and/or employees of the Federal Correctional Institute, Aliceville, Alabama; and **SEVEN CORNERS, INC.,**

    Defendants.

**COMPLAINT FOR IMMEDIATE INJUNCTIVE AND OTHER RELIEF CONCERNING PLAINTIFF'S URGENT MEDICAL CONDITION**

_____

1

Case 1:19-cv-00488-CCE-LPA   Document 1   Filed 05/10/19   Page 1 of 19

The plaintiff, Angela M. Beck, seeking the intervention of the Court to enjoin the immediate urgent medical treatment for her cancerous condition and other relief to which she is entitled, hereby states and alleges the following:

## ACTION

1. The plaintiff, an inmate at the Federal Correctional Institute (FCI), Aliceville, Alabama, brings this action pursuant to *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971), to enjoin the defendants to perform their constitutional duties to provide urgent medical care to plaintiff, who has been diagnosed with malignant breast cancer, and to seek appropriate compensatory damages for their failure to do so in violation of plaintiff's rights under the Eighth Amendment to the United States Constitution.

## JURISDICTION AND VENUE

2. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331.

3. Plaintiff is a citizen and resident of Surry County, North Carolina; and was convicted of criminal offenses in the United States District Court for the Middle District of North Carolina, and sentenced by Judge Catherine Eagles, as set forth below.[1] Venue is therefore proper in this Court pursuant to 28 U.S.C. § 1391.

## PARTIES

---

[1] Pursuant to 18 U.S.C. 4205(g) and 18 U.S.C. § 3582, as amended by the Firs Step Act, plaintiff has filed a Motion for Compassionate Relief in that action, MDNC Case No. 1:13 CR 186-6, based on the same and/or similar facts as outlined below, which is pending before the Court.

4. As stated above, plaintiff Angela M. Beck is a citizen and resident of Surry County, North Carolina, and is currently incarcerated at the Federal Correctional Institute (FCI), Aliceville, Alabama.

5. The defendant, Hugh J. Hurwitz, is the Director of the Federal Bureau of Prisons (BOP), an agency of the United States of America. In his capacity as Director, defendant Hurwitz is constitutionally authorized, empowered and obligated to ensure that inmates within the custody of the Bureau of Prisons of the United States, including the FCI, Aliceville, Alabama, are provided reasonable and adequate medical care for any medical conditions which may afflict them. Defendant Hurwitz is sued in his official capacity as Director of the Federal Bureau of Prisons, and in his individual capacity. Defendant Hurwitz is referred to hereafter collectively with the other governmental defendants as "the BOP defendants."

6. The defendant, J.A. Keller, is the Southeast Regional Director of the Federal Bureau of Prisons, an agency of the United States of America. In his capacity as Southeast Regional Director, defendant Keller is constitutionally authorized, empowered and obligated to ensure that inmates within the custody of the Bureau of Prisons of the United States, including the FCI, Aliceville, Alabama, are provided reasonable and adequate medical care for any medical conditions which may afflict them. Defendant Keller is sued in his official capacity as Southeast Regional Director of the Federal Bureau of Prisons and in his individual capacity. Defendant

Keller is referred to hereafter collectively with the other governmental defendants as "the BOP defendants."

7. The defendant, Patricia V. Bradley, is the Warden of the FCI, Aliceville, Alabama. In her capacity as Warden, defendant Bradley is constitutionally authorized, empowered and obligated to ensure that inmates within her custody are provided reasonable and adequate medical care for any medical conditions which may afflict them. Defendant Bradley is sued in her official capacity as Warden of FCI, Aliceville, and in her individual capacity. Defendant Bradley is referred to hereafter collectively with the other governmental defendants as "the BOP defendants."

8. The defendant Seven Corners, Inc. (defendant Seven Corners) is a corporation incorporated in the State of Indiana with a Certificate of Authority to transact business in North Carolina. Upon information and belief, defendant Seven Corners is an agent of the above named defendants responsible for the administration of medical care and treatment in federal prisons throughout the country; and in the performance of such duties, has acted under the color of federal law. In this capacity, defendant Seven Corners is constitutionally obligated to ensure that inmates within the custody of the Bureau of Prisons are provided reasonable and adequate medical care for any medical conditions which may afflict them. Defendant Seven Corners

is referred to hereafter collectively with the other defendants in the designation "the defendants."

9. At all times pertinent to this action, defendants John Doe and Jane Doe have been officers, agents, and/or employees of FCI, Aliceville. "Defendants John Doe and Jane Doe" (defendants Doe) is a designation intended to include and refer to all officers, agents, and or employees of FCI, Aliceville, who participated in the refusal and/or delay of plaintiff's medical care and violated plaintiff's constitutional rights, as described below, resulting in injuries to plaintiff. Defendants Doe are sued in their individual and official capacities as officers, agents, and or employees of FCI, Aliceville. Plaintiff is unable, in the absence of discovery, to identify defendants Doe further; nevertheless, upon information and belief, defendants Doe are readily identifiable to the other defendants, and through discovery plaintiff will supplement this complaint to provide these defendants' full names. Defendants Doe are referred to hereafter collectively with the other individual defendants in the designation "the defendants."

## FACTS

**Facts Regarding Defendants' Authority and Responsibilities to Provide Medical Care and Treatment for Plaintiff**

10. As alleged above, at all times pertinent to this action, the BOP defendants were constitutionally required to provide reasonable, effective and adequate medical care and treatment of plaintiff's cancer, including the provision of prompt referrals

5

to specialists and medical providers qualified to perform all necessary testing and to determine the appropriate medical therapy and procedures to treat plaintiff's cancer. In addition, in order to carry out their responsibilities and properly delegate duties to their agents, the BOP defendants were responsible for establishing policies and procedures to effect the prompt and appropriate administration of medical care and treatment to its inmates.

11. As alleged above, upon information and belief, at times pertinent to this action, defendant Seven Corners was obligated as an agent of the BOP defendants to administer reasonable, prompt and effective medical care to BOP inmates, including the prompt referral of inmates to appropriate specialists and the scheduling of necessary examinations and procedures, and to establish or adhere to policies and procedures to effect their responsibilities as administrators.

**Facts Concerning Plaintiff's Medical Condition and Treatment**

12. On December 12, 2013, plaintiff was convicted of drug offenses in the United States District Court for the Middle District of North Carolina, as documented in Case No. 1:13 CR 186-6.

13. The Court sentenced plaintiff to a term of 189 months in the Federal Bureau of Prisons (BOP), which was subsequently reduced to 165 months. Since 2013, plaintiff has been in BOP custody at FCI, Aliceville, Alabama. Plaintiff is

6

presently 47 years of age, and as of the anticipated date of her release at the expiration of her sentence will be approximately 54 years of age.

14. In or about August to September, 2017, plaintiff reported to prison officials that she had discovered a lump in her left breast which she had detected through self-testing. Plaintiff's left breast was sore and tender to the touch. Plaintiff requested a medical examination but did not receive one until October 16, 2017.

15. On October 16, 2017, a prison doctor examined plaintiff and noted her reported lump in her left breast. The prison doctor advised that plaintiff needed to be tested for breast cancer. Plaintiff was extremely distressed at this information due to the fact that she was well-aware of her family history of breast cancer and that she was vulnerable to the disease and its potential consequences.

16. On December 6, 2017, almost two months after the prison doctor's urgent request, plaintiff was examined by a general surgeon. The surgeon noted plaintiff's "history of knowledge of L [left] breast masses & recent discovery of R [right] breast masses as well." He also noted her "[s]trong family history of mother, maternal aunt, & maternal great-grandmother with breast cancer." The surgeon's impression was "clinical suspicion for left breast cancer," and noted an "[u]rgent plan" for a bilateral mammogram with ultrasound and follow-up.

17. On December 21, 2017, plaintiff was transported to Pickens County Medical Center in Carrollton, Alabama, which conducted a mammogram, finding

7

multiple breast masses and cysts. The examining doctor emphasized that the test was "highly suggestive of malignancy," and advised referral to general surgery for a biopsy.

18. On December 29, 2017, the prison doctor, after reviewing the mammogram report, also advised that plaintiff be referred to a general surgeon for biopsy of her breast.

19. On January 8, 2018, the prison doctor again stated that plaintiff was in need of a left breast biopsy.

20. On January 29, 2018, plaintiff was seen by the nursing staff because she had a knot in her breast which, according to plaintiff's reports, was "new" and "painful." The prison medical director described plaintiff's condition of her left breast and again noted "general surgery consult pending."

21. On February 7, 2018, plaintiff was examined by a general surgeon who again noted that plaintiff had a family history of breast cancer, and again requested ultrasound guided bilateral breast biopsies.

22. On March 1, 2018, an examination by a prison medical provider revealed that plaintiff had multiple lumps in her breasts described as being the sizes of, respectively, a "walnut," "a small plum," an "acorn," an "almond," an "egg" and a "prune."

23. On May 11, 2018, a prison doctor again noted that plaintiff needed to proceed with biopsies of her breasts.

24. On June 3, 2018, plaintiff was seen by a surgeon who noted her history and again advised that she had possible breast cancer and advised BRCA (genetic) testing to decide on the course of action in surgery.

25. On June 26, 2018, plaintiff complained of soreness in her nipples, and the prison doctor again noted that "general surgery consult breast biopsy pending."

26. On July 10, 2018, plaintiff was again examined by the prison doctor who again discovered masses in both breasts which needed biopsies.

27. On July 26, 2018, BRCA genetic testing was performed and the results were received by the surgeon on or about August 7, 2018. Based upon the genetic test results, the surgeon recommended a left breast needle localization biopsy.

28. On August 10, 2018, a prison doctor again noted plaintiff's history and observed "[l]ocalized swelling, mass and lump, trunk, abnormal results of function studies of organs and systems" as support for breast biopsy.

29. On August 10, 2018, a breast biopsy was finally ordered, scheduled for August 28, 2018.

30. On August 14, 2018, the prison doctor, again, followed up concerning the need for biopsy.

31. On August 28, 2018, over eight months after the emergent results of plaintiff's mammogram and the urgent request of plaintiff's surgeon for a biopsy, plaintiff was finally transported to the local medical facility, DCH Regional in Tuscaloosa, Alabama, for a left breast biopsy. The biopsy was performed on the same date and revealed "extensive breast disease that extended laterally."

32. On September 6, 2018, the surgical pathology results from plaintiff's biopsies were reported, and plaintiff was diagnosed with malignant breast cancer, Stage II, in her left breast.

33. There was no medical justification for the repeated delays between the prison doctor's initial detection of lumps in plaintiff's left breast, and plaintiff's positive mammogram and her biopsy, which had been requested urgently and repeatedly by her medical providers during the interim.

34. Although plaintiff had been informed by her medical providers after the biopsy that surgery should be scheduled without delay, she heard nothing from defendants about the scheduling of the surgery for over a month and was told that it had been "put on hold due to the hurricane."

35. Plaintiff inquired of defendant Bradley in writing about the scheduling of the surgery. Upon information and belief, at the time of plaintiff's inquiry, defendants had taken no action to schedule a date for the urgent surgery, but in

response to her inquiry, defendant Bradley contacted the prison medical department and informed plaintiff that her surgery was being scheduled "in the very near future."

36. On October 24, 2018, when plaintiff still had received no word as to the specific schedule of the surgery, she filed a Request for Administrative Remedy addressed to defendant Bradley, writing the following:

> I have been waiting patiently to go and have my breast removed because I have been told numerous times that I am going real soon but it's been since the end of August and my cancer is in stage 2. I don't want this cancer to get any worse while I sit here waiting on someone to do what they are suppose [sic] to do to help me get medical treatment. I have a family that cares about me and wants me to make it home. Sometimes I wonder if I am ever going to get my surgery, the doctor wanted it done the next week and it's already been 2 months. I am still a human being and I need to get this done before it gets any worse. Each day that I wait this cancer is growing inside of my body. Please get me out to the hospital.

37. Finally, on November 1, 2018, plaintiff was transported to DCH Regional Medical Center where a general surgeon performed a modified left radical mastectomy, including axillary lymph nodes. The surgeon noted that plaintiff should return for a follow-up examination within one week.

38. Following the surgery, plaintiff lost feeling and mobility of her left arm.

39. The defendants failed and refused to comply with the surgeon's advice as to follow-up care. Specifically, in non-compliance with the surgeon's discharge instructions, plaintiff received no follow-up appointment with the surgeon for over a month.

11

40. Finally, on December 13, 2018, approximately six weeks after plaintiff's surgeon had advised follow-up treatment within a week of surgery, plaintiff finally had a follow-up visit with the surgeon. The surgeon, emphasizing the need for plaintiff to be evaluated by an oncologist, noted that plaintiff may require a portacath placement for potential chemotherapy.

41. Despite the surgeon's specific advice, defendants failed and refused to schedule an oncology consult.

42. On March 21, 2019, plaintiff was again taken to see her surgeon who again noted her history, examined her, and found multiple breast cysts, stating that her condition had deteriorated. The surgeon ordered a puncture aspiration of the cysts with ultrasound guidance and, noting a breast mass that was unchanged, ordered a needle localization of the right breast if the solid mass was still present with cyst aspiration. On March 24, 2019, the surgeon performed the prescribed procedure, describing the "removal of dark greenish fluid – benign cystic fluid multiple cysts."

43. Upon information and belief, on or about April 3, 2019, almost four months after plaintiff's surgeon advised for an oncologist to evaluate plaintiff, she was finally transported to see an oncologist. Upon information and belief, the oncologist recommended further testing, and depending on the results, consideration of potential additional surgery and therapy. The oncologist further recommended

that plaintiff see a radiation oncologist. Upon information and belief, to date, no arrangements have been made to see that the oncologist's recommendations are carried out.

44. Given the urgency of determining adjuvant therapy to treat plaintiff's malignant breast-cancer, there is no medical justification for defendants' delay of almost six months in providing appropriate follow-up care to plaintiff following her surgery, including evaluation by an oncologist and a radiation oncologist to determine the appropriate therapy to treat and prevent the recurrence or spread of her breast-cancer.

### Defendants' Deliberate Indifference to Plaintiff's Urgent Needs for Treatment of Breast Cancer

45. At all times during the above time period, defendants were aware of the urgency of plaintiff's condition, and yet continuously and unjustifiably delayed treatment and failed to provide reasonable and adequate medical care to plaintiff.

46. Specifically, defendants' 10-month delay following detection of lumps in her left breast and 8-month delay following her positive mammogram until a biopsy was performed were unjustifiable and constitute grossly inadequate medical care and substantial departures from the standard of care for the treatment of breast cancer, creating a significant risk that plaintiff's cancer will return and cause irreparable harm to plaintiff.

47. In addition, defendants' continuing delays of over six months in providing critical follow-up treatment following plaintiff's surgery to determine the proper adjuvant therapy necessary to treat her breast cancer constitutes grossly inadequate medical care which, upon information and belief, is continuing, and substantial departure from the standard of care for the treatment of breast cancer, creating a significant risk that plaintiff's cancer will return and cause irreparable harm to plaintiff.

48. Upon information and belief, defendants Hurwitz and Keller had actual or constructive knowledge that one or more subordinates or agents were engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to plaintiff. Further, their response to their conduct was so inadequate as to show deliberate indifference to or tacit authorization of the practices and there is an affirmative causal link between their inaction and the constitutional injury suffered.

49. Upon information and belief, defendant Bradley had actual or constructive knowledge that one or more subordinates or agents were engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury. Further, defendant Bradley's response to their conduct was so inadequate as to show deliberate indifference to or tacit authorization of the practices, and there is an affirmative causal link between her inaction and the constitutional injury suffered.

50. As a result of defendants' continuing failures to perform their constitutional obligations to plaintiff, plaintiff is at a significant, increased risk that her breast cancer will recur or spread, and her life may be threatened.

51. Nevertheless, defendants still have failed to ensure that plaintiff is receiving reasonable, adequate and prompt care to treat her breast cancer and prolong her life.

**Exhaustion of Administrative Remedies**

52. Upon information and belief, plaintiff has exhausted her administrative remedies under the PLRA, 42 U.S.C. § 1997e.

**FIRST CLAIM FOR RELIEF**
**Violation of Plaintiff's Constitutional Rights—**
**Claim for Immediate Injunctive Relief Based on Plaintiff's**
**Urgent Need for Treatment of her Cancer**

53. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

54. As an inmate in defendants' federal prison system, plaintiff has a constitutional right to reasonable and adequate medical care from the defendants pursuant to the Eighth Amendment to the United States Constitution.

55. Defendants violated plaintiff's constitutional rights in denying her necessary and urgent medical care and treatment for her breast cancer. Specifically, defendants' above conduct constitutes deliberate indifference to plaintiff's urgent needs for treatment of her breast cancer as follows:

a. In deliberately and intentionally denying plaintiff the urgent and critical care and treatment which she needed;

   b. In ignoring or disregarding the known substantial risk of serious harm to plaintiff created by the excessive and repeated delays in providing a biopsy, in scheduling surgery, and in providing appropriate post-surgical follow-up care and therapy, delays which are well-documented in defendants' files;

   c. In delaying the treatment which exacerbated plaintiff's injuries and unnecessarily prolonged plaintiff's pain;

   d. In failing to establish and/or adhere to appropriate policies and procedures for the treatment of serious medical needs of plaintiff.

56. Defendants' conscious disregard of the risks facing plaintiff violates all standards of decency.

57. As a proximate result of defendants' continuing violations of plaintiff's constitutional rights, plaintiff has suffered and is suffering severe life-threatening conditions from her malignant breast cancer.

58. If defendants had provided reasonable and adequate medical care, as repeatedly advised by her doctors who examined plaintiff from October 2017 to the present, plaintiff's breast cancer would have been treatable and her condition would have improved.

16

Case 1:19-cv-00488-CCE-LPA   Document 1   Filed 05/10/19   Page 16 of 19

59. In the absence of reasonable and adequate treatment, plaintiff's condition deteriorated and she is at increased risk of the spread of her disease which could threaten her life.

60. As set forth below, plaintiff is in need of immediate injunctive relief to ensure that she receive urgent medical care by cancer specialists who can evaluate her condition, determine the appropriate treatment, consider potential options of chemotherapy, radiation or additional surgery to treat her cancerous condition, and to help prevent the spread of her disease and save her life.

### SECOND CLAIM FOR RELIEF
### Violation of Plaintiff's Constitutional Rights—
### Claim for Compensatory Damages

61. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

62. As an inmate in defendants' federal prison system, plaintiff has a constitutional right to reasonable and adequate medical care from defendants pursuant to the Eighth Amendment to the United States Constitution.

63. Defendants violated plaintiff's constitutional rights in denying her necessary and urgent medical care and treatment for her breast cancer, as alleged specifically in ¶55 above.

64. Defendants' conscious disregard of the risks facing plaintiff violates all standards of decency.

65. As a proximate result of defendants' continuing violations of plaintiff's constitutional rights, plaintiff has suffered and is suffering severe life-threatening conditions from her malignant Stage II breast cancer.

66. In addition to her need of immediate injunctive relief, plaintiff is entitled to compensatory damages for personal injuries which she sustained as a result of defendants' violations.

## REQUEST FOR RELIEF

Plaintiff respectfully requests the following relief:

A. That this Court enter a temporary restraining order and a preliminary injunction ordering and directing defendants to provide immediate, urgent and adequate medical treatment for plaintiff's life-threatening breast cancer;

B. That plaintiff recover compensatory damages for the violations of her federal constitutional rights;

C. That plaintiff recover pre-judgment and post-judgment interest on all amounts recovered herein;

D. That plaintiff recover the costs of this action, including reasonable attorney's fees pursuant to the Equal Access to Justice Act, 5 U.S.C. § 504; and 28 U.S.C. § 2412.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, plaintiff hereby demands a trial by jury on all issues presented herein.

This the 10th day of May, 2019.

Elliot Morgan Parsonage, PLLC.

/s/ Robert. M. Elliot
Robert. M. Elliot (7709)
Helen L. Parsonage (35492)
Alice Chen Anderson (44175)
Joseph Lambert (44548)
Benjamin P. Winikoff (49625)
426 Old Salem Road
Winston-Salem, North Carolina 27101
Telephone: (336) 724-2828
Facsimile: (336) 724-3335
rmelliot@emplawfirm.com
hlparsonage@emplawfirm.com
bpwinikoff@emplawfirm.com

/s/ James B. Craven III
James B. Craven III (997)
P.O. Box 1366
Durham, NC 27702
(919)688-8295
JBC64@MINDSPRING.COM

Attorneys for Plaintiff